### John H. Demott

*v.*

### The Stockton Paper Ware Manufacturing Co.

In adjusting the priorities of several encumbrancers on lands of an insolvent corporation in the hands of the receiver of this court.—*Held*,

(1) That banks which had loaned money to such corporation on notes endorsed by its directors, were entitled to be subrogated to the rights of such directors, under a mortgage given to them by the corporation to indemnify them for such endorsements.

(2) That the receiver had power to adjust by agreement the rights of claimants under the mechanics lien law, although no steps beyond filing their claims had been taken.

Demott *v.* Stockton Paper Ware Mfg. Co.

(3) That where such claims have passed into judgment with the receiver's knowledge, they should be regarded as established.

(4) That where a lien claim was filed after the beginning of the insolvency proceedings in this court, it is not necessary to pursue such claim to judgment unless so required by the court or receiver.

———

Proceedings in insolvency under the act "concerning corporations." On petition of the Amwell National Bank of Lambertville and the Lambertville National Bank, praying subrogation and payment of their respective claims out of the proceeds of the sale of certain property of the defendant, and petition of Stephen B. Hill, praying distribution of the proceeds of sale among mechanics lien claimants.

*Mr. John Lilly* and *Mr. James Wilson*, for the banks.

*Mr. C. H. Skillman, Mr. R. S. Kuhl* and *Mr. E. P. Conkling*, for lien claimants.

*Mr. J. T. Bird*, for the receiver.

THE CHANCELLOR.

The Amwell National Bank of Lambertville, and the Lambertville National Bank, by their petition, state that they respectively lent to the defendant, the Stockton Paper Ware Manufacturing Company, certain money on promissory notes made by that company, and endorsed by certain persons who were directors thereof. The note originally given to the Amwell Bank was made by the treasurer of the company and endorsed by R. Van Dyke, P. T. Nevius, A. J. Ransavell, R. H. Wilson and H. B. Dean, all directors of the company, was payable at three months, and dated November 9th, 1877. On the 9th of February following, that note was renewed for three months by a note for the same amount, signed by R. H. Wilson and John H. Demott (the latter had purchased the interest of Van Dyke in the company, and taken his place as one of the directors), and

endorsed by Dean, Wilson, Ransavell, Nevius, Demott, and Wilson as treasurer—he having succeeded Ransavell in that office. Another renewal for the full amount of the note was made May 11th, 1878, by a note at three months, made by Wilson, payable to Demott, and endorsed by Demott, Nevius, Ransavell, Dean and Wilson. Another renewal was made on the 16th of August, 1878, for the full amount of the note, by a new note, at three months, given by Wilson, payable to the order of Demott, and endorsed by Demott, Nevius, Ransavell and Wilson. That note was, on the 16th of November, 1878, protested for non-payment, and all the endorsers duly notified according to law, and is now held by the Amwell Bank wholly unpaid.

The notes held by the Lambertville Bank are two in number, one for $1,000 and the other for $700, both renewals. The original of the note for $1,000 was given January 28th, 1878, signed by the defendant, by its president and treasurer, and endorsed by Wilson, Dean, Ransavell, Nevius, Demott, Kase, and Wilson as treasurer, and was payable at three months. When it became due it was renewed for ninety days by a note dated April 29th, 1878, for the same amount, signed by Wilson and endorsed by Kase, Dean, Ransavell, Nevius, Demott and Wilson. Another renewal was made on the 29th of July, 1878, by another note for the full amount, payable at three months, signed by Wilson, and endorsed by Kase, Ransavell, Nevius, Demott and Wilson, and the last renewal was made on the 28th of October, 1878, by a note for the full amount, payable three months after date, signed by Wilson, and endorsed by Kase, Demott, Nevius, Dean and Wilson. That note was, on the 31st of January, 1879, protested for non-payment, and all the endorsers duly notified according to law, and is now held by the bank wholly unpaid.

The original of the note of $700 was a note of $800 given to the bank, September 17th, 1877, by the defendant, signed by it, by its treasurer, and endorsed by Kase, Dean, Demott, Wilson, Nevius, and Ransavell in his individual capacity

and as treasurer. It was payable three months after date. On the 17th of December, 1877, it was renewed for $700 ($100 of the principal having been paid) by a note of the defendant, at three months, signed by its president and treasurer, and endorsed by Kase, Ransavell, Wilson, Nevius, Demott, Dean, and Ransavell as treasurer. That note was renewed, on March 18th, 1878, for its full amount by a note, at three months, signed by the company, by its president and treasurer, and endorsed by Nevius, Wilson, Kase, Demott, Ransavell, Dean and the treasurer. Another renewal was made, on the 20th of June, 1878, for the full amount of $700, by a note at ninety days, made by Wilson and endorsed by Ransavell, Kase, Demott, Nevius, Dean and Wilson; and that note was, on September 21st, 1878, renewed for its full amount by a note, at three months, given by Wilson and endorsed by Kase, Ransavell, Nevius, Dean and Wilson. The last-mentioned note was, on the 24th of December, 1878, protested for non-payment, and all the endorsers duly notified according to law, and is still held by the bank wholly unpaid. By a resolution of the board of directors of the defendant, passed October 29th, 1877, it was resolved that the company give its note to the Amwell Bank for $3,000, at three months, and of that date, and that Wilson, Dean and Nevius should become the endorsers thereon; and, on the 24th of December, 1877, another resolution was adopted that the company give a bond of indemnity to Ransavell, Wilson, Dean, Van Dyke and Nevius to indemnify and secure them against any loss or damage which they or either of them might sustain as endorsers on the note given to the Amwell Bank for $3,000, dated November, 1877; also, on a note given to the same bank for $750, dated November, 1877; also, on a note for $1,000, which it was proposed to give to some bank, on or before the 1st of March then next, for the purpose of taking up that note of $750, and for other uses of the company, provided those persons should also endorse that note; and that a mortgage be executed to the parties upon the lot,

buildings and machinery of the company to secure the pay-
ment of the bond.

On the 27th of November, 1878, it was resolved that a
mortgage be executed on the real estate, machinery and
fixtures of the company to secure Ransavell, Wilson, Nevius,
Dean and Demott as endorsers on certain notes.  By the
mortgage, dated November 27th, 1878, given in pursuance
of that resolution, the defendant mortgaged to Ransavell,
Wilson, Kase, Dean, Nevius and Demott, its factory, with
the engines, machinery &c.; the proviso being, that if the
defendant, its successors or assigns, should well and truly
pay or cause to be paid to the Amwell Bank, its successors
or assigns, $3,750, according to two certain promissory notes
given by Demott and Wilson for and on behalf of the defend-
ant, one of which was therein said to bear date February
8th, 1878, and to be for the payment of $3,000, at three
months from its date, and to be endorsed by Wilson, Dean,
Ransavell, Nevius and Demott, and to have been given by
Demott and Wilson; and the other to bear date February
26th, 1878, and to be for the payment of $750, at thirty days
from date, and to be endorsed by Wilson, Dean, Ransavell,
Nevius and Demott, and to have been given by Demott and
Wilson; and should also pay or cause to be paid to the
Lambertville Bank, its successors or assigns, $1,000, accord-
ing to a certain other promissory note given by Kase, presi-
dent, and Wilson, treasurer, for and on behalf of the
defendant, dated January 28th, 1878, and payable at the
last-mentioned bank, and endorsed by Wilson, Dean, Ran-
savell, Nevius, Demott and Kase, the mortgage was to be
void, but, on failure of such payments, to be and remain in
full force.

By another mortgage, dated April 4th, 1878, the defend-
ant mortgaged to Ransavell, Wilson, Kase, Nevius and Dean
the same property, with proviso that if the defendant, its
successors or assigns, should well and truly pay, or cause to
be paid, to the Lambertville Bank, its successors or assigns,
$700, according to a promissory note given by Kase, as

president, and Wilson, as treasurer, for and in behalf of the defendant, which note was therein declared to bear date March 18th, 1878, and to be for the payment of $700 in three months from date, and to be endorsed by Ransavell, Wilson, Kase, Nevius and Dean, then the mortgage was to be void, otherwise in force.

By another mortgage given by the defendant to Ransavell, Wilson, Kase, Dean, Nevius and Demott, February, 1878, certain goods and chattels in the factory of the defendant were mortgaged to them, on condition that if the defendant should well and truly pay to the Amwell Bank, its successors or assigns, $3,750, according to two certain promissory notes, one of which was therein declared to bear date February 8th, 1878, and to be for the payment of $3,000, three months after its date, and the other to bear date February 26th, 1878, and to be for the payment of $750, at thirty days after its date, both of which were endorsed by Wilson, Dean, Ransavell, Nevius and Demott, and were given by Demott and Wilson for and on behalf of the defendant; and should well and truly pay to the Lambertville Bank, or its successors or assigns, $1,000, according to a certain other note, dated January 28th, 1878, payable three months after date, and endorsed by Wilson, Dean, Ransavell, Nevius, Demott and Kase, and given by Kase, president, and Wilson, treasurer, for and on behalf of the defendant, the mortgage was to be void, otherwise in force.

In April, 1878, the defendant was, under the act concerning corporations, by proceedings in this court, declared to be insolvent, and a receiver was appointed, who, by order of June 11th, 1878, was directed to sell the property mortgaged by those mortgages, clear of encumbrance, there being upon it liens the legality of which was brought in question, and the property being of a character to deteriorate in value pending the litigation. He sold it accordingly.

On the 7th of August, 1878, Charles M. Pettee filed a lien claim, under the mechanics lien law, against the defendant

as builder and owner of the factory property, for $50.26.
On the 17th of May, 1878, Caroline W. Cowin filed a like
claim for $341.09. On the 15th of April, 1878, Salter &
Wilson filed a like claim for $258.92. Upon these claims
no proceedings in court were taken after the filing of them.
On the 25th of April, 1878, John G. Stair filed a like claim
for $85.15, upon which he subsequently recovered a judg-
ment. On the 14th of June, 1878, George V. Cressen filed
a like claim for $192.35, on which he subsequently recov-
ered a judgment. On the 24th of the same month, Stephen
B. Hill filed a like claim for $492.51, on which he recovered
a judgment. On the 23d of April, 1878, William V. Kase,
Bro. & Co. filed a like claim for $235.44, upon which they
subsequently recovered a judgment; and, on the 23d of the
same month, the Stockton Spoke Works filed a like claim
for $28.31, upon which they subsequently recovered a judg-
ment. After the commencement of the proceedings in
insolvency in this court, W. V. Kase, Bro. & Co. made a
general assignment for the benefit of their creditors.

The Amwell and Lambertville Banks claim subrogation
under the before-mentioned mortgages, and they insist that,
as to some of the lien claims (those upon which no proceed-
ings were had after the filing of the claim), the lien is lost.
They also insist that, inasmuch as, by the inspection of the
lien claim of Stair, it appears that there is no endorsement
of the issuing of a summons upon it (although the master
reports that judgment was recovered thereon), Stair must
be held to have no lien. They also insist that there should
be a deduction from the amount of the judgments recovered
by Hill and W. V. Kase, Bro. & Co., because of certain pay-
ments made to them respectively, which the banks claim
should be credited on the lien claims. The counsel for the
assignee of William V. Kase, Bro. & Co. resists the claim
of the banks to subrogation, and insists that he is entitled
to receive out of the funds derived from the sale of the
mortgaged property, the share of his assignors therein.

As a general rule, where a surety or a person standing in the situation of a surety for the payment of a debt, receives security for his indemnity and to discharge such indebtedness, the principal creditor is in equity entitled to the full benefit of that security; and it makes no difference that such principal creditor did not act upon the credit of such security in the first instance. And the right of the creditor is the same when the security is a mortgage, or other lien given to the surety by the principal after the principal and surety have both become bound, even though there may have been no previous agreement that indemnity should be given; and to entitle the creditor to enforce this right in equity, it is not necessary that he should have exhausted his remedies at law or have reduced his debt to judgment. *Brandt on Suretyship* § *282*.

There can be no doubt of the right of the banks to subrogation in this case. The mortgages are expressly on condition that the defendant shall pay the notes given by the directors for and on behalf of the defendant. It appears by the testimony, as well as by the minutes of the defendant, that the loans which were made upon the notes of which the notes now held by the banks are renewals, were of money borrowed for and which went to the defendant, and was used in its business. Subrogation will be decreed accordingly. This disposes of the claim made by the assignee of William V. Kase, Bro. & Co.

The position taken by the banks against the lien claims cannot be supported. It appears by the statement of counsel, on the hearing, that some, if not all, of the lien claims upon which nothing was done after the filing of the claims, were agreed to or adjusted by agreement with the receiver. It is urged that the receiver had no power to make such settlement; but it is clear that the receiver not only has the power under the act, but it is his duty to settle and adjust the claims of encumbrance and other creditors of the estate. He acts for this court, and may have its aid and direction, if he requires it, in any case of doubt or difficulty, and

those who are aggrieved by his decision may appeal to this court under the statute. It was the object of the act not only to prevent an unequal distribution of the property of an insolvent corporation, but also to save it from the costs of litigation and the consequent depreciation which must arise from the delay incident to settling the status and claims of encumbrancers upon it.

In *Smith* v. *The Trenton Delaware Falls Co., 3 Gr. Ch. 505,* it was said by the court, that the receivers have the authority, and it is their duty, to settle the priorities of encumbrancers, and in case of dissatisfaction an appeal to the chancellor is expressly given; and that in settling priorities they must inquire into the validity of the several claims, and refuse to allow any which they may believe to be fraudulent or illegal. See, also, *Suydam* v. *Receivers of the Bank of New Brunswick, 2 Gr. Ch. 114; State Bank at New Brunswick* v. *Receivers of Bank of New Brunswick, Id. 266,* and *Kelly* v. *Neshanic Mining Co., 3 Hal. Ch. 579.*

As to those lien claims which have passed into judgment with the knowledge of the receiver, the judgments should be regarded as conclusive. *Jacobus* v. *Mut. Ben. Life Ins. Co., 12 C. E. Gr. 604.*

It may be remarked, in regard to the claim of Stair, to which the objection is made that the issuing of summons is not endorsed upon it (as before stated, it appears that the claim has passed into judgment), that the claim was filed two days after the commencement of the proceedings in insolvency. While a creditor claiming a lien may, under such circumstances, by an application to the court, be permitted to pursue his claim to judgment, for the purpose of establishing his right to the lien, and the amount which is due thereon, it is not necessary that he should do so unless required by the court or the receiver. Therefore the same diligence is not required of a lien claimant in regard to the issuing of summons upon his claim after a decree of insolvency in such a case as this, as before. The appointment of a receiver operates practically to stay suits which are in

progress for, or with a view to the establishment of, liens upon the property of the insolvent corporation.

The questions which are raised in regard to the allowance of credits upon the claims of Hill and William V. Kase, Bro. & Co., respectively, appear to have been adjudicated upon in the suits upon the lien claims, and will not, under the circumstances, be again examined here.

There will an order in accordance with these views.